UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

SWINERTON BUILDERS,

                Plaintiff,

v.

LEXINGTON INSURANCE COMPANY,

                Defendant.

Case No. 2:21-cv-259-RAJ-TLF

ORDER

This matter comes before the Court on the parties' supplemental briefing (Dkt 57, Dkt. 59) concerning plaintiff's request for in camera review pursuant to the Court's protective order (Dkt 30) and plaintiff's motion to apply Washington law to attorney-client privilege issues in this action (Dkt. 92).

## DISCUSSION

The trial court should not automatically grant a request for inspection of documents *in camera* simply because a party makes a request. *United States v. Zolin,* 491 U.S. 554, 571 (1989); Commentary on Protection of Privileged ESI, Sedona Conference Journal, Vol. 17 at 138-139 (2016). *In camera* review of information that has been withheld from discovery on the basis of a legal privilege or protection is required only if the party who challenges the privilege designation provides the Court with a "factual basis sufficient to support a reasonable, good faith belief that *in camera* inspection may reveal evidence that information in the materials is not privileged." *In re*

ORDER - 1

1  *Grand Jury Investigation,* 974 F.2d 1068, 1075 (9th Cir. 1992); *Rock River Comm'ns,*
2  *Inc. v. Universal Music Group, Inc.,* 745 F.3d 343, 353 (9th Cir. 2014) (The trial court's
3  decision to deny *in camera* review is not an abuse of discretion when the party
4  challenging the privilege designation identifies little more than an unfounded suspicion
5  as the basis for their request for *in camera* inspection).

6      The question of whether the party challenging the designation has provided a
7  sufficient factual showing to require the Court to conduct *in camera* review is not a
8  stringent threshold – it is meant only "to prevent 'groundless fishing expeditions'". *United*
9  *States v. Christensen,* 828 F.3d 763, 800-805 (9th Cir. 2016), *quoting, In re Grand Jury*
10 *Investigation,* 974 F.2d at 1073. By submitting documents to the Court for *in camera*
11 review, a party does not waive or otherwise affect the privilege. *See, United States v.*
12 *Zolin,* 491 U.S. 554, 568 (1989) (disclosure of documents to the district court for the
13 purpose of determining the merits of a claim of privilege does not terminate the
14 privilege).

15     In this case, plaintiff contends all of the attorney-client communications and
16 counsel's work product information concerning the insurance claims files for the
17 concrete slab and bus duct claims should be discoverable under *Cedell v. Farmers Ins.*
18 *Co.*, 176 Wn.2d 686, 697 (2013). Dkt. 92, Plaintiff's Motion Regarding Choice of Law on
19 Attorney-Client Privilege, at 1, 3-4. And plaintiff contends the defendant cannot rebut the
20 *Cedell* presumption of discoverability, because the defendant cannot show that their
21 attorney(s) was not participating in any quasi-fiduciary claim handling tasks. Dkt. 57,
22 Plaintiff's Supplemental Briefing Regarding Privilege Issues, at 8-10. Plaintiff also
23 asserts that the civil fraud exception applies. Dkt. 57 at 11.

24

25

ORDER - 2

The defendant counters these arguments by pointing out that Lexington's coverage counsel, CWP, was not retained or requested to perform adjustment activities for any of the claims at issue in this case. Dkt. 59, Lexington's Brief Regarding Discovery of Privileged Documents, at 3; Dkt. 61, Declaration of Stacy Stracener, at 4. They also assert that Washington State law should not be applied to the issue of attorney-client privilege, because the locations where CWP attorneys were working for the defendant, and the individuals receiving attorney-client advice on behalf of defendant (from Lexington, Crawford, or EFI) were in Texas, California, Mississippi, Illinois, or New York -- outside of Washington State. Dkt. 95, Lexington's Response to Plaintiff's Motion Regarding Choice of Law on Attorney Client Privilege, at 2, 4-6.

In addition, defendant points out that the timeline of the claim investigation shows that before Lexington retained CWP, the investigation and denial of Swinerton's claims had been assessed. Dkt 59, Defendant's Brief Regarding Discovery of Privileged Documents, at 3. The defendant also argues that plaintiff fails to identify any factual foundation for allegations of fraud, and fails to identify specific objections to the privilege log entries. *Id.*

Under the Erie Doctrine, a federal court considering a diversity jurisdiction case will apply federal procedural law, and state substantive law. *Erie R.R. v. Tompkins*, 304 U.S. 64, 78 (1938); *Freund v. Nycomed Amersham*, 347 F.3d 752, 761 (9th Cir. 2003). Under Fed. R. Evid. 501, "state law governs privilege regarding a claim or defense for which state law supplies the rule of decision." The District Court applies the forum state's choice-of-law rules to resolve which state's privilege law controls if there are factual connections to more than one state. *Atl. Marine Const. Co. v. U.S. Dist. Court for*

ORDER - 3

*W. Dist. Of Texas,* 571 U.S. 49, 65 (2013); *Patton v. Cox,* 276 F.3d 493, 495 (9th Cir. 2002). The federal court utilizes federal civil procedure law to decide whether in camera review is necessary. *Ingenco Holdings LLC v. Ace American Ins. Co.,* No. C13-543 RAJ, 2014 WL 6908512 (W.D. Wash. Dec. 8, 2014) at *8.

Under Washington law, the threshold question is whether there is an actual conflict with another state's law. *Burnside v. Simpson Paper Co.,* 123 Wn.2d 93, 103 (1994). "An actual conflict of law exists where the result of an issue is different under the laws of the interested states." *Woodward v. Taylor*, 184 Wn.2d 911, 917 (2016). If such a conflict exists, the Court would then consider Section 139 of the Restatement (Second) of Conflict of Laws to resolve it. *State v. Donahue,* 105 Wn. App. 67 (2001).

With respect to work product doctrine, Federal Rule of Civil Procedure 26(b)(3) governs assertions of work product protection in federal court. *United Coal Cos. v. Powell Constr. Co.,* 839 F.2d 958, 966 (3rd Cir. 1988); *see*, *Admiral Ins. Co. v. United States Dist. Ct. for Dist. Of Ariz.*, 881 F.2d 1486, 1494 (9th Cir. 1989); *MKB Constructors v. Am. Zurich Ins. Co.,* No. C13-611 JLR, 2014 WL 2526901 (W.D. Wash. May 27, 2014) at *18-*23. Work product is a qualified immunity protecting a party from discovery of documents and tangible items prepared by a party, or the party's representative, in anticipation of litigation. *Hickman v. Taylor,* 329 U.S. 495, 510-511 (1947); FRCP 26(b)(3). It protects "certain materials prepared by an attorney 'acting for [their] client in anticipation of litigation.'" *United States v. Nobles,* 422 U.S. 225, 237-238 (1975) (quoting *Hickman v. Taylor,* at 508; other citations omitted). In addition, the work product doctrine protects against questions that improperly tend to elicit mental impressions of a party's lawyer. *Shreib v. Am. Fam. Mut. Ins. Co.,* 304 F.R.D. 282, 287

1  (W.D. Wash. 2014) (citations omitted). Work product qualified immunity does not protect
2  against discovery of facts the adverse party's attorney has learned, where the attorney
3  learned those facts, or whether certain documents exist -- even if the documents may
4  not be subject to discovery. *Id.* at 287-288.

5     If a document was not prepared exclusively for litigation and serves a dual
6  purpose – it was prepared in preparation for litigation but also for a different non-
7  litigation reason – the Court would then consider "the totality of the circumstances and
8  determine whether the 'document was created because of anticipated litigation, and
9  would not have been created in substantially similar form but for the prospect of
10 litigation.'" *Id.* at 286-287 (quoting *United States v. Richey,* 632 F.3d 559, 567 (9th Cir.
11 2011) (internal citation omitted).

12     A.  <u>Washington</u>

13     Under Washington law, first party bad faith claims are based on the fact that
14 insurers have a fiduciary duty to act in good faith towards its insureds. *Cedell v.*
15 *Farmers Ins. Co.*, 176 Wn.2d 686, 697 (2013). Permitting blanket privilege in insurance
16 bad faith claims because of lawyer participation "would unreasonably obstruct discovery
17 of meritorious claims and conceal unwarranted practices." *Id.* Therefore, for first party
18 insured bad faith claims, the attorney-client privilege is presumed inapplicable to
19 communications between the insurer and its counsel during the claims adjustment
20 process. *Id.* at 698-99. An insurer can rebut this presumption with a showing that "its
21 attorney was not engaged in the quasi-fiduciary task of investigating and evaluating or
22 processing the claims, but instead in providing the insurer with counsel as to its own
23 potential liability; for example, whether or not coverage exists under the law." *Id.*

24

25

Washington law also recognizes a civil fraud exception to the attorney-client privilege which requires a two-step analysis. *Cedell*, 176 Wn.2d at 699-700. First, the court conducts an in camera review to determine "whether the attorney client-privilege applies to particular discovery requests, and whether appellants have overcome that privilege by showing a foundation in fact for the charge of civil fraud." *Id*. at 700 (quoting *Escalante v. Sentry Ins. Co.*, 49 Wn. App. 375, 394 (1987)). When an insurer acts in bad faith in an attempt to defeat a meritorious claim, "bad faith is tantamount to civil fraud." *Cedell*, 176 Wn.2d at 700. Second, if the court finds that there is a foundation to permit a claim of bad faith to proceed, the attorney-client privilege is waived. *Id*.

B. Texas

Under Texas law, the attorney-client privilege protects confidential communications between a client and their lawyer; between a client's lawyer and the lawyer's representative; and between the client's representative and the client's lawyer. Tex. Evid. R. 503(b). This privilege does not protect communications between a client and attorney where the attorney was employed in a non-legal capacity. *Harlandale Indep. Sch. Dist. v. Cornyn*, 25 S.W.3d 328, 332 (Tex. App. 2000).

The relevant inquiry is not whether the attorney was hired to do something other than provide a legal opinion (i.e. conducting an investigation). *Id*. (adopting the reasoning in *In re Allen*, 106 F.3d 582, 600-05 (4th Cir. 1997). Rather, the relevant inquiry is whether the investigation was related to the rendition of legal services. *Harlandale*, 25 S.W.3d at 333-35 (holding that the attorney's independent investigation report was protected by the attorney-client privilege because the investigation was not the ultimate purpose for which the attorney was hired, she prepared the report for the

ORDER - 6

primary purpose of providing legal advice); *In re Texas Farmers Ins. Exch.*, 990 S.W. 2d 337, 341 (Tex. App. 1999) (holding that the attorney's investigation was not protected by the attorney-client privilege because the attorney was retained primarily to conduct a routine investigation of the facts underlying an insurance claim); *In re General Agents Ins. Co. of Am., Inc.*, 224 S.W.3d 806, 818 (Tex. App. 2007) (holding that attorney-client privilege protects communications between designated claims adjuster and the coverage attorney requesting a coverage opinion).

      C. Mississippi

Under Mississippi law, the attorney-client privilege protects all information the client received from the attorney in their professional capacity and in the course of the representation. *Fresenius Med. Care Holdings, Inc. v. Hood*, 269 So. 3d 36, 63 (Miss. 2018). The courts interpret the scope of this privilege broadly. *Id.*

If the communication between the lawyer and client would facilitate rendition of legal services or advice the communication is protected, even if the communication is not purely legal analysis or advice. *Id.* A client may implicitly waive the privilege if the content of the communication is integral to the outcome of the legal claims of the action. *Travelers Prop. Cas. Co. of Am. v. 100 Renaissance, LLC*, 308 So. 3d 847, 854 (Miss. 2020). The Mississippi Supreme Court has listed three circumstances when this implied waiver applies: "when a party specifically pleads reliance on an attorney's advice as an element of a claim or defense, voluntarily testifies regarding portions of the attorney-client communications, or specifically places at issue, in some other manner, the attorney-client relationship." *Id.* (quoting *Jackson Med. Clinic for Women, P.A. v. Moore*, 836 So. 2d 767, 771 (Miss. 2003)).

D. California, New York and Illinois

Lexington's response brief states that California, New York and Illinois have a less significant relationship with the communications at issue and does not contend that these laws should control in this action. Dkt. 95 at 6.

E. Actual Conflict

The Court must determine if there is an actual conflict between the relevant laws of Washington and Texas or Mississippi. An actual conflict exists when "the result of an issue is different under the laws of the interested states." *Woodward*, 184 Wn.2d at 918.

There is an actual conflict of law between Washington and Texas and Mississippi. Under Washington law, the court operates with a presumption that the attorney-client privilege does not protect communications between the insurer and its counsel during the claim adjustment process unless the insurer can show that counsel was only providing legal advice regarding the insurer's potential liability. *Cedell*, 176 Wn.2d at 698-99.

Under Texas law, communications between the insurer and its counsel during the claim adjustment process would be protected so long as the communication was related to the rendition of legal services. *Harlandale*, 25 S.W. 3d at 333-35. The protection is not limited to strictly providing legal advice. *Id*.

Similarly, under Mississippi law, the communication between the insured and its counsel would be protected if it would facilitate the rendition of legal services, even if the communication is not purely legal analysis or advice. *Fresenius Med. Care Holdings, Inc.*, 269 So.3d at 63.

Accordingly, a conflict exists -- because under Washington law only communications related to legal advice regarding potential liability would be protected, while Texas and Mississippi both apply a broader privilege protecting communications as long as they relate to or facilitate rendering legal services.

F. <u>Section 139</u>

Washington courts rely on the Restatement (Second) of Conflict of Laws to determine which state privilege is applicable. *Donahue*, 105 Wn. App. at 71. "Evidence that is privileged under the local law of the state which has the most significant relationship with the communication but which is not privileged under the local law of the forum will be admitted unless there is some special reason why the forum policy favoring admission should not be given effect." Restatement (Second) of Conflicts of Law § 139. In making this determination, the Court considers the following factors:

(1) the number and nature of the contacts that the state of the forum has with the parties and with the transactions involved,

(2) the relative materiality of the evidence that is sought to be excluded,

(3) the kind of privilege involved, and

(4) fairness to the parties.

Restatement (Second) of Conflict of Law, Comment on § 139(2).

In this case, the Court declines to apply Washington law. The defendant has shown that communications at issue are the documents and conversations between attorneys and clients located outside of Washington. Although the plaintiff's lawsuit pertains to insurance policies that were issued for construction on a project where the real property and buildings are located in Seattle, Washington, the defense has shown

ORDER - 9

that communications between attorneys and clients about legal issues concerning claims under the contracts of insurance were primarily happening outside Washington State. The legal aspects were being evaluated by attorneys and clients in Texas and Mississippi. The individuals who were seeking legal counsel would have a legitimate expectation that the attorney-client privilege laws of the state where they were seeking the legal advice would be applicable. *See generally, Apex Mortgage Corporation v. Great Northern Insurance Company,* No. 17 C 3376, 2018 WL 318481 (N.D. Ill., E.D. 2018) (attorney-client privilege belongs to the client; location of client and place where the attorney-client relationship arose, are important factors).

Plaintiff has not shown that any of the four factors in Restatement (Second) of Conflicts of Law § 139 would tilt in favor of applying the Washington State law of attorney client privilege. Plaintiff has not identified any of the entries in the privilege logs produced by the defendant that would suggest Washington law should be applied because there is a special reason why Washington's case law should have a greater impact on the particular communications between attorneys and clients in Texas and Mississippi.

Texas and Mississippi law broadly protect attorney-client communications and in those states there is not a legal exception equivalent to *Cedell v. Farmers Ins. Co.*, 176 Wn.2d 686, 697 (2013). Because the plaintiff bases their request for *in camera* review on allegations of civil fraud and an exception to attorney-client privilege under Washington law, and the Court has determined that Texas and Mississippi law should be applied, the Court will not conduct the *in camera* review.

With respect to work product protection, the analysis is different. Work product protection is a qualified immunity, and federal law applies. Yet plaintiff has not identified issues with respect to defendant's privilege log entries that would raise any specific questions about whether work product protection should be allowed for certain categories of documents. Dkt. 57, Plaintiff's Supplemental Briefing Regarding Privilege Issues, at 12. A general assertion that the Court should conduct in camera review because the plaintiff believes that non-work-product documents have been withheld is insufficient. *Rock River Comm'ns, Inc. v. Universal Music Group, Inc.,* 745 F.3d 343, 353 (9th Cir. 2014) (The trial court's decision to deny *in camera* review is not an abuse of discretion when the party challenging the privilege designation identifies little more than an unfounded suspicion as the basis for their request for *in camera* inspection). Because plaintiff has not set forth any factual foundation as grounds for *in camera* inspection concerning work product, the Court declines to review the files that have been submitted.

**CONCLUSION AND ORDER**

Plaintiff's motion requesting the Court to apply Washington law of attorney-client privilege and conduct *in camera* review concerning whether the defendant has properly withheld documents based on attorney-client privilege (Dkt. 57, Dkt. 92) is **DENIED**. The Court also **DENIES** plaintiff's request, in supplemental briefing (Dkt. 57), for *in camera* review concerning work product qualified immunity. Unless the plaintiff files a timely objection seeking to have this Order reviewed by the Honorable Richard A. Jones within the 14-day period for

filing a challenge, *see* Fed. R. Civ. P. 72(a), the Court will return to defense counsel the hard copy files submitted to it by the defendant.

Dated this 26th day of May, 2022.

_Theresa L. Fricke_
Theresa L. Fricke
United States Magistrate Judge